Filed 7/1/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MIGUEL VALENCIA, JR., et al., | B325803 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC723902) |
| v. | |
| ARMANDO MENDOZA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Spierer, Woodward, Corbalis & Golberg, Stephen B. Goldberg and Jeffrey Lewis for Defendants and Appellants.

Cohen & Cohen, Kerry A. Cohen and Barry L. Cohen for Plaintiffs and Respondents.

———————————————

Armando Mendoza, Coastal Holdings, LLC, and Class A Realty, Inc. (collectively, the Mendoza defendants) appeal from a judgment entered after the trial court confirmed an arbitration award in favor of Miguel Valencia, Jr., and Lizette Valencia on the Valencias' claims in connection with undisclosed defects in a home they purchased from the Mendoza defendants. On appeal, the Mendoza defendants contend the court erred in denying their petition to vacate the arbitration award and granting the Valencias' petition to confirm the award after finding the petition to vacate was untimely. The Mendoza defendants also contend the arbitrator committed legal error—reviewable under the parties' arbitration agreement—when the arbitrator excluded key evidence from the arbitration hearing.

The trial court correctly found that the Mendoza defendants' petition to vacate the arbitration award was untimely under Code of Civil Procedure section 1290.6[1] because it was filed more than 10 days after service of the Valencias' petition to confirm the arbitration award. The fact the petition to vacate complied with the deadline under section 1288 to file the petition within 100 days of service of a signed copy of the arbitration award does not excuse the failure to meet the 10-day deadline to respond to the petition to confirm the award—a response seeking vacation of the arbitration award was required to comply with both. Although the court had discretion to extend the deadline under section 1290.6 for good cause, it did not abuse its discretion in finding no good cause. We therefore consider whether the Mendoza defendants met their burden to show the arbitrator

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

erred in its rulings excluding evidence by reviewing the Mendoza defendants' initial opposition to the petition to confirm the arbitration award, without considering the declarations they later filed with their untimely petition to vacate. They did not meet their burden, and we affirm.

## BACKGROUND AND PROCEDURAL HISTORY

A.  *The Valencias' Home Purchase[2]*

In August 2016 the Valencias purchased a house on South Harbor View Drive in San Pedro (the home) from Coastal Holdings, a company wholly owned and controlled by Mendoza. Mendoza's broker in the transaction was Class A Realty; Mendoza owned 50 percent of Class A Realty, and his fiancée owned the other 50 percent. The Valencias were attracted to the home because it appeared to be in move-in condition.

Mendoza had purchased the home several months earlier from Fillipo Tranni with the intention to "flip"[3] the home for resale. Tranni had lived in the home for many years and started a major renovation: Tranni had hired an architect, obtained some permits, and begun demolition work when he realized the renovation was too complicated, and he decided instead to sell the

---

[2]     Our recitation of the facts underlying the dispute is taken from the arbitrator's findings of fact in the arbitration award and, except as noted, are undisputed for the purpose of the appeal.

[3]     Merriam-Webster dictionary defines "flip" in relevant context as follows: "[T]o buy and usually renovate (real estate) so as to quickly resell at a higher price." (Merriam-Webster's Online Dict. (2024) <https://www.merriam-webster.com/dictionary/flip> [as of July 1, 2024].)

home.  In selling the home to Mendoza, Tranni disclosed that work had been done without necessary permits, and it was not in compliance with building codes.  Tranni also disclosed the home had other issues, including water intrusion, stucco that was chipping, and improperly installed windows.

Mendoza was an experienced house flipper, having flipped 50 to 60 houses in the past.  Mendoza hired Pablo Rivas and Carlos Navarro to perform construction work to finish Tranni's renovation and allow resale as soon as possible.  Mendoza identified himself as the "owner/builder" on applications for the building permits he believed necessary for the job; his self-identification as the owner/builder required that all work be done by licensed contractors.  Mendoza, Rivas, and Navarro were not licensed contractors.  Further, a significant amount of work was completed before Mendoza obtained permits, so when the building inspector came to the site for a code inspection, the inspector could not see the prior work and whether it complied with building codes.  Other work was entirely unpermitted.  When Mendoza sold the home to the Valencias, he did not disclose the issues previously disclosed by Tranni, nor did he disclose that he did unpermitted work using unlicensed contractors.  When he listed the property for sale, he described it as "'completely remodeled'" with "'no expense spared.'"

Shortly after the Valencias purchased the home and moved in, problems arose.  After the first rain, water poured in around the windows installed by Mendoza.  While unsuccessful attempts to remedy the leak and repair the damage were underway, numerous other defects became apparent.  It was necessary for the Valencias to move out of the home for several months while extensive repairs were made.

B.	*The Arbitration and Award*

On October 2, 2018 the Valencias filed this action against the Mendoza defendants, asserting 10 causes of action based on fraudulent concealment of defects in the home.[4]  After the Mendoza defendants moved to compel arbitration, the parties agreed to a stipulation for binding arbitration and a stay of the court action, which the trial court approved and entered on January 25, 2019.  Paragraph 8 of the parties' stipulation provided for enhanced judicial review of the arbitration award pursuant to *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 (*Cable Connection*).  The agreement stated, "[T]he Arbitrator shall apply California substantive law to the proceeding.  The arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.  It is the explicit and unambiguous intent of the parties that any error of law or legal reasoning shall be an act in excess of the arbitrator's powers that is reviewable on appeal.  Specifically, any party may seek to vacate any award that has been made in excess of the Arbitrator's powers, as provided for in [§ 1286.2], with a concomitant right of appeal to a court of competent jurisdiction."

The Valencias asserted eight claims in the arbitration against one or more of the Mendoza defendants: (1) violation of state contractor licensing laws (Bus. & Prof. Code, § 7028; Code Civ. Proc., § 1029.8); (2) breach of contract; (3) breach of statutory

---

[4]	On our own motion we augment the record to include the Valencias' complaint filed on October 2, 2018 in the superior court.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

5

duty of disclosure (Civ. Code, § 1102); (4) fraud; (5) negligent misrepresentation; (6) negligence; (7) violation of the common law duty of disclosure; and (8) fraudulent concealment (Civ. Code, § 2079). There was extensive pre-hearing discovery, including hundreds of written discovery requests and 17 depositions.

The arbitration hearing was held over five days in June 2021 before Judith C. Chirlin, a retired superior court judge. Twelve witnesses testified, including three engineers who testified as retained experts on building code requirements and damages: William McKee Nelson and David Stern (for the Valencias) and Bryce Dean Richmond (for the Mendoza defendants). At the conclusion of witness testimony, the parties submitted closing briefs and separate briefing on damages.

On August 23, 2022 the arbitrator issued a 17-page final arbitration award (award).[5] The arbitrator found the Valencias' causes of action fell into two main categories, negligence and failure to disclose, and multiple Mendoza defendants were liable in each category. The arbitrator awarded $432,536 in monetary damages, including $130,000 for repairs; $260,000 for impairment to the fair market value of the home due to the defects; and smaller amounts for loss of use, statutory penalties, and inspection fees.[6] Finding by clear and convincing evidence

---

[5]    The arbitrator issued an interim award in February 2022 addressing liability, and she subsequently entered separate rulings on punitive damages and attorneys' fees and costs, which were incorporated into the final award.

[6]    The arbitrator found the monetary damages sustained due to the undisclosed defects exceeded $390,000 but reasoned that awarding the full amount plus damages for the impairment in the home's value would "result in serious double counting";

that Mendoza "made false representations and failed to disclose known defects with knowledge of the falsity" and "intended to defraud the Valencias," the arbitrator awarded $438,800 in punitive damages. The arbitrator also awarded $364,544 in attorneys' fees and $52,667 in costs, plus prejudgment interest.

C.    *Confirmation of the Award*
      1.    *The Valencias' petition to confirm the award*

On September 2, 2022 the Valencias filed a petition to confirm the arbitration award, setting a September 28, 2022 hearing date. The petition attached the home purchase agreement, the stipulation to arbitrate, and the arbitration award. The Valencias did not file any declarations or additional evidence.

On September 14 the Mendoza defendants filed a four-page opposition.[7] In an introductory paragraph, the Mendoza defendants stated they were "in the process of completing drafting" a petition to vacate that would "likely be filed within the next 10-15 days." They had reserved a hearing date in April

_____

accordingly, the arbitrator discounted the cost of repairs by approximately $260,000.

[7]    On appeal, the parties do not dispute that the Mendoza defendants' September 14, 2022 opposition was timely under section 1290.6 (providing that a response to a petition to confirm an arbitration award shall be served and filed within 10 days after service of the petition, unless extended by agreement of the parties or a court order). The parties had agreed to a two-day extension of the service deadline as part of their electronic service agreement.

7

2023 and requested the court continue the Valencias' petition to confirm so that it would be heard with their petition to vacate.

The Mendoza defendants in their opposition argued the arbitrator's refusal to consider two items of critical evidence constituted grounds to vacate the award.[8] First, the arbitrator excluded a building inspection card that on its back "included a statement by the inspector, '"OK to close walls."' As described in the opposition, the building inspector testified at the hearing that he was unable to see the work done by the Mendoza defendants before the walls were closed, and the arbitrator made a finding in the award that "[a] significant amount of the work done by [the Mendoza defendants] was done before Mr. Mendoza pulled permits so that when the City Building Inspector came to inspect, he could not see the work and whether it had been done correctly and in accordance with the Building Codes." The Mendoza defendants argued that had the arbitrator allowed the inspection card into evidence, the annotation '"OK to close walls"' would have shown a "blatant lie" by the inspector (that he was not able to see the work before the walls were closed up), which would have discredited his testimony.

Second, the Mendoza defendants argued that although the Valencias' expert Nelson "relied heavily on Chapter 34 of the 2016 Building Code"[9] in testifying that repairing the home would

---

[8] The Mendoza defendants did not address the judicial standard of review of an arbitration award or note that the parties agreed to expand judicial review under *Cable Connection, supra*, 44 Cal.4th 1334.

[9] It is unclear to what the experts (and parties) were referring as "Chapter 34." Chapter 34 of the 2016 California

8

require a complete code upgrade, including opening up walls and constructing shear walls throughout the structure, the arbitrator precluded the Mendoza defendants' expert (Richmond) from testifying that Chapter 34 did not apply to the subject repairs, ruling that Richmond's testimony "exceeded the scope of his deposition testimony." As a result, Nelson's testimony about the significant corrective work necessary for code compliance was left unchallenged, inflating the damages award, which was predicated on "the largest repair scenario, including the repairs which were outlined by Mr. Nelson."

The Mendoza defendants did not submit any declarations or evidence in support of their opposition. In a concluding paragraph, the Mendoza defendants stated their forthcoming petition to vacate "will include a more detailed analysis of the evidence excluded and its impact on the [a]ward," and they reiterated their request that the petition to confirm and the petition to vacate be heard together "in the interest of judicial economy and common sense."

In their reply brief the Valencias argued the Mendoza defendants' opposition did not include any evidence to support vacation of the award (nor did it explicitly request to vacate the award), and there was no basis for a continuance because the

_____

Building Code is a reserved chapter. However, the index for Chapter 34 includes the following note: "Provisions of former Chapter 34, Existing Structures, are now located in Part 10, California Existing Building Code." We assume the experts and parties are referring to regulations governing existing structures that were formerly located in Chapter 34 of the Building Code but were moved to the "Existing Building Code." For convenience, we refer to Chapter 34, as do the parties, without addressing the substantive building code requirements.

Mendoza defendants' unfiled petition to vacate was already untimely under section 1290.6 for failure to serve the petition within 10 days after service of the Valencias' petition to confirm.

The Valencias also argued the arbitrator properly excluded the inspection card and Richmond's testimony about Chapter 34. The inspection card was "directly responsive to multiple production requests," and several witnesses had been deposed about the inspection, yet the Mendoza defendants did not produce the card in discovery or disclose it on their exhibit list. Moreover, the Mendoza defendants represented they had no further responsive records, then less than 24 hours before the arbitration hearing they "miraculously found the inspection card." At the hearing, the Valencias' lawyers objected to the admission of the inspection card and other late-produced documents on the basis of unfair surprise, and the arbitrator sustained the objection.

The Valencias' lawyer, Kerry Cohen, submitted a declaration that included excerpts of the discovery demands and responses, deposition notices, and correspondence with counsel regarding the inspection records. The correspondence showed that the Sunday before the Monday hearing, the Mendoza defendants' lawyer, Christopher Delaplane, wrote to Cohen to say Mendoza found the permit card that day. Delaplane explained that although Mendoza had previously searched his storage unit and produced his file relating to the home, the inspection card was not in that file. He and his fiancée conducted "another search" on the eve of the arbitration hearing and "found [the

inspection card] intermixed with other non-relevant documents."[10]

With respect to the exclusion of Richmond's testimony about Chapter 34, the Valencias argued the arbitrator properly restricted his testimony under the principles set forth in *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 (*Kennemur*) for excluding undisclosed expert opinions. As described in Cohen's declaration, which attached excerpts of Richmond's deposition and correspondence between the lawyers, Richmond testified in his March 2021 deposition that he had been retained to opine only about structural issues relating to a kitchen beam and whether exterior framing required 2x4 or 2x6 studs. Richmond confirmed he had not been asked to give any other opinions, although he testified he had received Nelson's report and might opine about Nelson's opinions "eventually."

Shortly before the arbitration hearing, Delaplane stated in response to a supplemental discovery demand that the Mendoza defendants' experts were "still in the process of formulating additional responses to Plaintiff's damage claims, all of which will be raised at the trial of this matter." Cohen demanded Delaplane make the experts available for deposition on these opinions, but Delaplane refused, stating "our experts are

_____

[10] The Valencias also argued that the handwritten annotation on the back of the card stating "OK to close walls," absent any context or foundation, did not impeach the building inspector. Further, they asserted, the inspector's hearing testimony that the walls were closed was consistent with his deposition testimony and photographs taken at the time of the inspection. We cannot evaluate this argument because the record on appeal does not contain any photographs or the inspector's testimony.

11

preparing for the arbitration and will be reviewing your experts' deposition transcripts in order to assess their respective opinions. . . . This does not make them subject to an additional round of depositions." As Cohen described in his declaration, at the arbitration hearing Delaplane sought to elicit opinions from Richmond regarding the applicability of the upgrade requirements under Chapter 34, and Cohen objected under *Kennemur*. After argument from counsel, the arbitrator sustained the objection.

    2.    *The Mendoza defendants' petition to vacate the award*

On September 27, 2022, the day before the hearing on the Valencias' petition to confirm the award, the Mendoza defendants filed a petition to vacate the arbitration award, supported by an eight-page memorandum and declarations from Mendoza, Delaplane, and Richmond. The Mendoza defendants raised the same two grounds for vacating the award they argued in their opposition (and raise on appeal): the arbitrator's exclusion of the building inspection card and Richmond's testimony about Chapter 34.

With respect to the inspection card, the Mendoza defendants' factual account of the last-minute discovery of the card was substantially consistent with the Valencias' account. Delaplane also stated in his declaration that the Mendoza defendants had requested the permit file for the home from the Los Angeles Department of Building and Safety,[11] and the

---

[11] In 1909 the City of Los Angeles annexed San Pedro, where the home is located. (See *In re Miller* (1910) 15 Cal.App. 43, 44.)

12

department failed to produce a copy of the back of the permit card.

Delaplane explained as to Richmond's testimony that Nelson raised Chapter 34 for the first time in his deposition, which was after Richmond's deposition. Further, Richmond and Delaplane repeatedly stated that Richmond would offer additional opinions in response to the Valencias' experts' opinions, and Richmond's opinions about Chapter 34 were introduced only for rebuttal. Delaplane also attested that the Mendoza defendants "were amenable to allowing [the Valencias] to take Mr. Richmond's deposition on his Chapter 34 opinions and to allow Mr. Nelson to be able to respond to said opinions," but the need for a further deposition should have been addressed in a motion prior to the arbitration and not by an evidentiary exclusion. Richmond in his declaration stated he would have testified that "Nelson wrongly applied Chapter 34 and incorrectly opined that a code upgrade for non-altered elements of the Property was necessary. Since the Property is considered 'conventional light-frame construction' and has a flexible diaphragm, only the altered portion of the Property would need to meet current codes."

### 3. *The trial court's order confirming the award*

The trial court heard the Valencias' motion to confirm on September 28, 2022. There was no court reporter present, and the parties have not provided a settled statement of the proceeding. As stated in its three-page minute order, the court found that it was required to confirm the award under section 1286.4 because the Valencias filed and served a petition to confirm that complied with the statutory requirements, and

13

the Mendoza defendants did not file and serve a request to vacate within 10 days of service of the petition to confirm as required by section 1290.6. And the Mendoza defendants' opposition did not present facts or evidence demonstrating good cause to extend the time for the Mendoza defendants to file a response or to continue the hearing on the petition to vacate.[12]

The trial court continued, "While Defendants contend the arbitrator refused to admit critical evidence, the general rule in California remains that the grounds for vacating an arbitration award are exclusively statutory and there is no statutory provision for vacating an award on mere grounds of a refusal to hear evidence, without more." Further, "Defendants fail[ed] to provide any evidence to show that the evidentiary ruling prejudiced them because the ruling 'influenced the outcome of the arbitration.'"

The trial court granted the Valencias' petition to confirm the award, and on its own motion, the court advanced the hearing and vacated the Mendoza defendants' petition to vacate the award. The court entered a judgment in favor the Valencias for $1,512,850, which included the arbitrator's award and $224,303 in prejudgment interest.[13] On October 7, 2022 the Valencias filed

---

[12] In an apparent typographical error, the minute order stated the Mendoza defendants' opposition "did present facts or evidence" demonstrating good cause for vacating the award. The parties do not dispute that the minute order should have stated the Mendoza defendants "did *not* present facts or evidence." (Italics added.)

[13] The trial court entered the $1,512,850 judgment against Mendoza and Coastal Holdings. The court entered a separate

14

a notice of entry of the order confirming the award and a notice of entry of judgment.

The Mendoza defendants timely appealed.[14]

## DISCUSSION

A.     *Governing Law and Standard of Review of Arbitration Awards*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the

---

judgment for $1,148,306 against Class A Realty, omitting the punitive damages award as to that defendant.

[14]     On October 20, 2022, after entry of judgment but before they filed their notice of appeal, the Mendoza defendants filed a motion in the trial court for mandatory relief from the judgment under section 473, subdivision (b), due to attorney error. On appeal, the Mendoza defendants request, as an alternative to reversing the judgment, that we remand the matter to the trial court with directions to rule on their motion for relief. On September 26, 2023 the Mendoza defendants filed a request to augment the appellate record to include the opposition and reply briefs and the trial court's May 4, 2023 order on the relief motion. We deemed their request to augment the record as a request for judicial notice and denied it on October 13, 2023.

An order denying a motion for relief from a judgment pursuant to section 473, subdivision (b), is a separately appealable postjudgment order. (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 927, fn. 6.) The merits of the postjudgment motion under section 473, subdivision (b), is outside the scope of this appeal, which was taken from the order confirming the arbitration award and the judgment.

15

judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.'" (*Richey v. AutoNation Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) The California Arbitration Act (Code Civ. Proc., § 1280 et seq.; CAA) provides "only limited grounds for judicial review of an arbitration award"; under the statute, "courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers." (*Cable Connection, supra*, 44 Cal.4th at p. 1344, citing § 1286.2, subd. (a); see *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085 ["The exclusive grounds for vacating an arbitration award are provided in [section] 1286.2."].)

"Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey, supra*, 60 Cal.4th at p. 916; accord, *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 957 (*Law Finance*); see *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 ["Most legal errors in arbitration are not reviewable."].) However, parties may "take themselves out of the general rule that the merits of the award are not subject to judicial review" if they "clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Cable Connection, supra*, 44 Cal.4th at p. 1361; accord, *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 535 (*Harshad*) [general rule limiting judicial review "does not apply when the parties have agreed to 'limit the

16

arbitrators' authority by providing for review of the merits in the arbitration agreement.'"].)

In *Cable Connection*, the parties' arbitration agreement stated, "'The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.'" (*Cable Connection, supra*, 44 Cal.4th at p. 1361, fn. 20.) The Supreme Court held that such an agreement providing for judicial review for legal error was enforceable, reasoning that because the CAA authorizes review of an award on the ground that it exceeds an arbitrator's powers (§ 1286.2, subd. (a)(4)),[15] and an arbitrator's powers are circumscribed by terms of the parties' arbitration agreement, "[i]f the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law, *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review has been displaced by the parties' agreement." (*Cable Connection*, at p. 1355; accord, *Harshad, supra*, 14 Cal.App.5th at p. 535.)

Here, the parties expressly invoked *Cable Connection* in their stipulation to arbitrate by citing the case and including judicial review language virtually identical to the language

---

[15] Section 1286.2, subdivision (a)(4), states, "[T]he court shall vacate the award if the court determines" that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

17

approved by the Supreme Court. Accordingly, the arbitration award was reviewable for legal error.[16]

Section 1285.4 prescribes the requirements for a petition to confirm an arbitration award. "A petition to confirm need only set forth (1) the names of the arbitrators, (2) the arbitration agreement (by description or attached copy), and (3) the award and written opinion of the arbitrators (by description or attached copy)." (*Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745; see § 1285.4.) "If a petition . . . is duly served and filed, the court shall confirm the award as made, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceedings." (§ 1286.) Accordingly, once a petition to confirm

---

[16] The trial court appears not to have considered the parties' stipulation to heightened judicial review of the arbitration award. For example, the court cited the holdings in *Richey, supra*, 60 Cal.4th at page 916 in finding that "there is no statutory provision for vacating an award on mere grounds of a refusal to hear evidence, without more," and *Heimlich v. Shiji, supra*, 7 Cal.5th at page 369 (with respect to the evidentiary exclusions) that there was "absolutely no basis for even an inference that the Arbitration hearing was not fair to both parties."

The Valencias contend the Mendoza defendants forfeited any claim the trial court applied the wrong standard of judicial review by failing to raise the agreement for heightened review under *Cable Connection* in either their opposition to the petition to confirm the award or their petition to vacate. (See *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["'Failure to raise specific challenges in the trial court forfeits the claim on appeal.'"].) We decline to reach forfeiture because we review the trial court's order confirming the award de novo and independently evaluate the arbitrator's evidentiary rulings.

18

that meets the statutory requirements has been served, "'the burden is on the party attacking the award to affirmatively establish the existence of error.'" (*Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 94 (*Rivera*); accord, *Lopes v. Millsap* (1992) 6 Cal.App.4th 1679, 1685.)

We review de novo a trial court order confirming an arbitration award, including its determination whether the arbitrator exceeded her powers in granting relief. (*Richey, supra*, 60 Cal.4th at p. 918, fn. 1; *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743, 751.) However, to the extent the trial court's decision to grant a petition to confirm or deny an arbitration award rests on its determination of disputed factual issues, we review the court's orders for substantial evidence. (*Branches Neighborhood Corp.*, at p. 750; *Harshad, supra*, 14 Cal.App.5th at p. 536 ["One pertinent standard is our standard for reviewing factual findings to determine whether they are supported by substantial evidence."].) "There is a presumption favoring the validity of the award, and appellant bears the burden of establishing [its] claim of invalidity." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.)

B.      *The Trial Court Did Not Err in Disregarding the Mendoza Defendants' Untimely Petition To Vacate*

The Mendoza defendants contend the trial court erred in failing to consider the evidence they submitted with their petition to vacate the arbitration award in ruling on the Valencias' petition to confirm. They argue the court should instead have continued the hearing on the petition to confirm and allowed full briefing on the petition to vacate, in which the merits and timeliness of the petition to vacate and supporting evidence could

19

have been addressed. However, it is undisputed that the Mendoza defendants failed to submit any timely evidence opposing the petition to confirm, and given the absence of any showing of good cause for relief from the statutory deadline, the trial court did not abuse its discretion in confirming the award at the September 28, 2022 hearing.

A losing party's request to vacate an arbitration award may be made by filing either a petition to vacate the award (§ 1285) or a response to a petition to confirm the award that requests vacation of the award (§ 1285.2). Section 1285 provides, "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." Section 1285.2 provides, in turn, "A response to a petition under this chapter may request the court to dismiss the petition or to confirm, correct or vacate the award." Further, "[t]he allegations of a petition are deemed to be admitted by a respondent duly served therewith unless a response is duly served and filed." (§ 1290.) "A petition to correct or vacate an award, or a response requesting such relief, shall set forth the grounds on which the request for such relief is based." (§ 1285.8.)

Three statutory provisions address the timeliness of pleadings that challenge confirmation of an arbitration award. Section 1288 provides, "A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." Section 1288.2 likewise provides, "A response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award. . . ."]. And section 1290.6 provides, "A response shall be served and filed

20

within 10 days after service of the petition . . . ."  However, "[t]he time provided in [section 1290.6] for serving and filing a response may be extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court." (*Ibid.*)

For nearly half a century, the Courts of Appeal have consistently held that once the prevailing party in an arbitration files a petition to confirm an arbitration award, the 10-day deadline in section 1290.6 controls when a losing party must respond, not the 100-day deadline in section 1288.2.  (*Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 66 ["The 'well delineated statutory scheme' giving a party who opposes a petition to confirm only 10 days to file a response spans several decades."]; see *Rivera, supra*, 54 Cal.App.5th at p. 93 ["'When the party petitions the court to confirm the award before the expiration of the 100-day period, respondent may seek vacation or correction of the award by way of response only if he serves and files his response within 10 days after the service of the petition (§ 1290.6).'"]; *De Mello v. Souza* (1973) 36 Cal.App.3d 79, 83 [same]; *Coordinated Const., Inc. v. Canoga Big "A", Inc.* (1965) 238 Cal.App.2d 313, 318 ["[T]he proper interpretation of section 1288.2 is that the 100-day limit applies only when the other party to the arbitration does not file a petition to confirm the award.  When such petition is filed a response must be filed within the time limit set forth in section 1290.6."].)

In *Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100, disapproved on another ground by *Law Finance, supra,*

21

14 Cal.5th at page 952, footnote 3 (*Darby*) ,[17] our colleagues in Division Two applied this longstanding principle in the situation where, as here, a party filed a section 1288 petition to vacate more than 10 days after service of a petition to confirm: "[A] competing request to vacate or correct the award—whether styled as a response to the petition to confirm or as a standalone petition—must be filed and served within 10 days of service of the petition to confirm, *even if that due date is less than 100 days after service of the award.*" (*Darby*, at p. 1110, footnote omitted.) The court rejected the argument that only filings "styled as responses" were subject to section 1290.6's 10-day deadline, whereas filings "styled as standalone petitions" could ignore the 10-day deadline, reasoning that any such distinction "would elevate form over substance, would effectively negate the 10-day deadline since any party who missed the 10-day deadline could simply restyle their untimely response as a standalone petition, and would be inconsistent with the Act's policy to decide postarbitration petitions 'expeditious[ly].'" (*Darby*, at p. 1110, fn. 7.)

In *Law Finance, supra*, 14 Cal.5th at pages 946 to 947, the Supreme Court recently considered the inverse issue—whether a response to a petition to confirm an arbitration award filed within 10 days of the petition to confirm but outside of the 100-day deadline under sections 1288 and 1288.2 was timely. The court held the response was not timely, observing, "[N]either

---

[17] The *Law Finance* court disapproved of *Darby v. Sisyphian, LLC, supra*, 87 Cal.App.5th 1100 "to the extent that it characterized section 1288.2's 100-day limitations period as 'jurisdictional' in the fundamental sense." (*Law Finance, supra*, 14 Cal.5th at p. 952, fn. 3.)

deadline supersedes the other. On the contrary, when a filing
both (1) responds to a petition to confirm, and (2) requests that
the arbitration award be vacated, both deadlines apply:
(1) Absent a written agreement or court order, the response must
be filed within 10 days after service of the petition to confirm and
(2) in any event, no later than 100 days after service of the
award." (*Ibid.*) The court added, however, "We need not and do
not decide whether a party that fails to file a timely response
under section 1290.6 may nevertheless request vacatur in a
petition to vacate filed within the limitations period of
section 1288." (*Id.* at p. 946, fn. 2, citing *Darby, supra*,
87 Cal.App.4th at p. 1110, fn. 7.)

The Mendoza defendants filed a timely opposition
(response) to the Valencias' petition to confirm the award, but the
opposition was not supported by any evidence. Only on the eve of
the hearing on the petition to confirm, nearly four weeks after
they had been served with the Valencias' petition to confirm (and
well after the 10 days), did they file the petition to vacate the
award that included supporting declarations and evidence. We
agree with the reasoning in *Darby, supra*, 87 Cal.App.5th at
page 1110 and footnote 7, that there is no material distinction
between a request to vacate filed as a response to a petition to
confirm under section 1288.2 and a standalone petition to vacate
under section 1288 with respect to whether the 10-day deadline
under section 1290.6 controls: It does. Accordingly, the trial
court was not required to consider the evidence attached to the
late-filed petition to vacate before ruling on the petition to
confirm. A contrary holding would vitiate a trial court's ability to
act on a timely filed petition to confirm an award and require a
court to continue a hearing on an unopposed (or inadequately

23

opposed) petition to confirm for up to 100 days from the filing of the award where, as here, the opposing party represents it plans to seek to vacate the award.

Although the trial court was not required to excuse the Mendoza defendants' noncompliance with the 10-day requirement under section 1290.6 or otherwise to adjust the hearing schedule on the Valencias' petition to confirm to allow the Mendoza defendants' late-filed evidence to be incorporated into their opposition, the court had discretion to do so. As the *Law Finance* court explained, "The extension mechanism in [section 1290.6] permits the parties to agree to extend the response deadline for any reason at all and permits the court to extend the deadline for good cause. That exception gives the parties and the court wide latitude to set a briefing schedule in any arbitration-related proceeding—an exception that would permit modifying the response deadline without necessarily meeting the requirements for equitable tolling or estoppel." (*Law Finance, supra*, 14 Cal.5th at p. 955 [reversing holding that CAA deadlines limited court's fundamental jurisdiction and remanding for consideration of equitable tolling and estoppel arguments for extending the deadlines under sections 1288 and 1288.2].)

We review a trial court's determination whether to extend a statutory deadline based on a showing of good cause for an abuse of discretion. (See *Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 327 ["a trial court's finding of 'good cause' is generally reviewed deferentially, solely for abuse of discretion"]; see *Lucci v. United Credit & Collection Co.* (1934) 220 Cal. 492, 495 [trial court's decision pursuant to statute permitting "an extension . . . 'in furtherance of justice' and 'upon good cause shown'" is reviewed for an "abuse of discretion"].)

24

The trial court did not abuse its discretion in finding there was no good cause to continue the hearing on the petition to confirm or to allow additional briefing.  (See *Robinson v. U-Haul Co. of California, supra*, 4 Cal.App.5th at p. 327 [explaining with respect to extension to file motion for attorneys' fees, "Where the standard requires 'good cause' only, it has been ""equated to a good reason for a party's failure to perform that specific requirement [of the statute] from which he seeks to be excused.""""]; *Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1036 [applying same standard in assessing good cause for relief from statutory requirements for summons].)

In their opposition to the petition to confirm, the Mendoza defendants requested that the court consider at the same time the petition to confirm and the petition to vacate—which the Mendoza defendants represented would "likely be filed within the next 10-15 days"—"in the interest of judicial economy and common sense."  The Mendoza defendants did not argue, let alone submit any evidence, why they were unable to submit evidence and a more developed argument in support of their opposition.  Moreover, the Mendoza defendants failed to request an order extending the deadline to file a response under section 1290.6 (or request the Valencias stipulate to an extension), either before or after the deadline passed.[18]

---

[18] Without a transcript or settled statement reflecting what was said at the hearing on the petition to confirm, we have no record of whether the Mendoza defendants presented evidence of good cause at the hearing, nor do they argue they did.  (See *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 ["[f]ailure to provide an adequate record on an issue requires that the issue be resolved against appellant," and "[w]ithout a record, either by

25

Because the Mendoza defendants did not submit evidence in their opposition to the petition to confirm and did not demonstrate good cause for relief from the 10-day deadline under section 1290.6, we, like the trial court, do not consider their untimely evidence in reviewing the award.

C.    *The Mendoza Defendants Have Not Shown Error by the Arbitrator in Excluding Evidence*

On appeal, the Mendoza defendants contend the arbitrator erred in excluding from evidence at the arbitration hearing the building inspection card with the handwritten annotation "'OK to close walls'" and Richmond's proposed testimony that Chapter 34 did not require a complete code upgrade at the home as a result of the repairs and alterations.[19]  As discussed, because the

_____

transcript or settled statement, a reviewing court must make all presumptions in favor of the validity of the judgment"]*;* see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 ["Because [the appellant] failed to furnish an adequate record of the attorney fee proceedings, [the appellant's] claim must be resolved against [him]."'].)

[19]    In their opening brief the Mendoza defendants argue only that they were "'substantially prejudiced . . . by the refusal of the arbitrator[] to hear evidence material to the controversy'" under section 1286.2, subdivision (a)(5).  Vacation of an award under section 1286.2, subdivision (a)(5), "must rest on more than a simple error in applying the rules of evidence" and is not a "'back door . . . through which parties may routinely test the validity of legal theories of arbitrators.'" (*Heimlich v. Shivji, supra,* 7 Cal.5th 350, 368.)  As discussed, however, the parties stipulated to enhanced judicial review for legal errors, and we therefore review the award for error rather than the more deferential

26

Valencias filed a sufficient and timely petition to confirm the arbitration award, the Mendoza defendants bore the burden "'to affirmatively establish the existence of error'" in order to vacate the award. (*Rivera, supra*, 54 Cal.App.5th at p. 94; *Lopes v. Millsap, supra*, 6 Cal.App.4th 1679, 1685.) The Mendoza defendants failed to meet this burden.

      1.    *Exclusion of the permit inspection card*

Under section 2023.030, subdivision (c), "[t]he court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence." "''Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be wilful.'''" (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545; see *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1214-1215 [evidence and issue sanctions were properly imposed after defendant engaged in a pattern of discovery abuse, including failing to produce responsive documents, concealing evidence in a document review room, and refusing to provide a witness for deposition, which collectively had the result of making the evidence unavailable to the plaintiff before the lapse of the discovery cutoff]; *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36 [trial court's determination that plaintiff's noncompliance with discovery was willful, warranting evidentiary sanctions, was "amply supported"

_____

standard under section 1286.2, subdivision (a)(5). Although the Mendoza defendants did not argue legal error until their reply brief, we decline to find forfeiture because the Valencias addressed legal error in their respondents' brief.

by a record "replete with instances of plaintiffs' attempts to . . . withhold promised items of discovery"].) "'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.'" (*Do It Urself Moving & Storage*, at p. 36; accord, *Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 54 ["The question 'is not whether the trial court should have imposed a lesser sanction; rather the question is whether the trial court abused its discretion by imposing the sanction it chose.'"]; *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224 ["We review the trial court's order [under section 2023.030] under the abuse of discretion standard and resolve all evidentiary conflicts most favorably to the trial court's ruling."].)

The Valencias submitted with their reply brief in support of the petition to confirm the arbitration award excerpts of discovery demands and responses, as well as attorney correspondence, showing that the permit inspection card was responsive to their demands. Yet the Mendoza defendants did not produce the annotated inspection card and averred they had no further responsive documents. After the conclusion of discovery, on the evening before the arbitration, Delaplane produced the annotated inspection card, stating that Mendoza and his fiancée conducted "another search" that day and "found [the inspection card] intermixed with other non-relevant documents." On the first day of the hearing, the arbitrator sustained the Valencias' objection to the admission of the inspection card.

Although the record does not reflect the grounds on which the arbitrator excluded the inspection card, we imply a finding from the order sustaining the objection that the arbitrator found

there was sufficient evidence the Mendoza defendants willfully failed to comply with the discovery requests by withholding the annotated inspection card that Mendoza previously averred was not in his possession, warranting exclusion of the inspection card. (See *Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1084 [in reviewing the imposition of a discovery sanction for abuse of discretion, "'[w]e view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it'"]; see also *Cable Connection, supra*, 44 Cal.4th at p. 1362 ["problems with the record" that might present an obstacle to effective judicial review have "a ready solution in the familiar rule that the decision under review is presumed correct on matters where the record is silent"].)  On this record, we cannot say the arbitrator's exclusion of the inspection card was an "'arbitrary, capricious, or whimsical action.'" (*Do It Urself Moving & Storage, supra*, 7 Cal.App.4th at p. 36; see *Vallbona v. Springer, supra*, 43 Cal.App.4th at pp. 1545-1546 [court did not abuse its discretion in excluding evidence as a discovery sanction where defendant failed to respond to requests for production, testified a burglary precluded his compliance, and then produced some purportedly stolen documents].)  Because there was no abuse of discretion, there was no error warranting vacation of the award.[20]

---

[20]     "[A]n abuse of discretion results in reversible error only if it is prejudicial." (*York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1190.)  Because we find no abuse of discretion or other legal error, we do not reach prejudice.

## 2. *Exclusion of Richmond's testimony regarding Chapter 34*

When an appropriate demand is made for the exchange of expert witness information, a party is required to disclose the general substance of the testimony the expert is expected to give at trial. (§ 2034.260, subd. (c)(2).) The disclosure allows the opposing party, in taking the expert's deposition, "to fully explore the relevant subject area . . . and to select an expert who can respond with a competing opinion on that subject area." (*Bonds v. Roy* (1999) 20 Cal.4th 140, 146-147; accord, *Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 416.) If a request is made, a party must "'"'disclose the substance of the facts and the opinions to which the expert will testify, either in his witness exchange list, or in his deposition, or both.'"'" (*Dozier v. Shapiro* (2011) 199 Cal.App.4th 1509, 1518-1519; accord, *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 778; *Kennemur, supra*, 133 Cal.App.3d at p. 919.) "'"When an expert is permitted to testify at trial on a wholly undisclosed subject area, opposing parties . . . lack a fair opportunity to prepare for cross-examination or rebuttal.'"'" (*Dozier*, at p. 1519; see *Easterby*, at p. 780.) An expert opinion at trial exceeding the scope of deposition testimony may be excluded "'*if* the opposing party has no notice or expectation that the expert will offer the new testimony, or *if* notice of the new testimony comes at a time when deposing the expert is unreasonably difficult.'" (*Dozier*, at pp. 1523-1524; accord, *Easterby*, at p. 780; see § 2034.300, subd. (d) [on objection, trial court "shall exclude from evidence the expert opinion of any witness that is offered by a party who has unreasonably failed to do any of the following: [¶] . . . [¶] [m]ake that expert available for deposition"].) "Except to the

extent the trial court bases its ruling on a conclusion of law (which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; accord, *People v. Rouston* (2024) 99 Cal.App.5th 997, 1010.)

The Valencias submitted excerpts of Richmond's deposition in which he testified he had not been asked to give any opinions besides those topics on which he had been designated and deposed, which did not include Chapter 34.[21]  In response to a supplemental discovery demand propounded prior to the arbitration hearing, Delaplane advised Cohen that "our experts . . . will be reviewing your experts' deposition transcripts in order to assess their respective opinions," but he refused Cohen's demand to make Richmond available for further deposition. Cohen objected under *Kennemur, supra*, 133 Cal.App.3d 907 after Delaplane sought to elicit Richmond's opinions about Chapter 34 at the arbitration hearing.

The parties have not provided a record of the arbitrator's findings in sustaining the Valencias' objection to the testimony, but, as discussed, we draw all reasonable inferences in favor of the arbitrator's order. (*Sabetian v. Exxon Mobil Corporation, supra*, 57 Cal.App.5th at p. 1084.)  In light of the evidence that Richmond did not disclose that he would testify about the application of Chapter 34, and the Mendoza defendants' refusal

---

[21]     Although the record does not contain Richmond's expert designation, and includes only limited deposition excerpts, the Mendoza defendants do not contend on appeal that the application of Chapter 34 was encompassed in the scope of Richmond's designation or deposition testimony.

to make Richmond available to be deposed on the additional opinions he intended to provide in response to Nelson's opinions (which had been disclosed), the arbitrator did not abuse her discretion in excluding the testimony. (See *Dozier v. Shapiro, supra*, 199 Cal.App.4th at p. 1524 [trial court did not abuse its discretion in limiting plaintiff's expert's testimony where plaintiff's counsel "never informed defendants about [expert's] postdeposition change of testimony, and therefore never gave them the opportunity to request a renewed deposition on that subject"].)

## DISPOSITION

We affirm the September 28, 2022 order confirming the arbitration award and the judgment. The Valencias are entitled to recover their costs on appeal.

FEUER, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.